Nov. Term, 1852.

SLOAN
v.
KINGORE.

*J. S. Buckles* and *J. Brownlee*, for the plaintiff.

*J. Smith*, for the defendant.

---

## SLOAN *v.* KINGORE and Another.

*A.* sold to *B.* nine cribs of corn, at 20 cents a bushel, with a warranty that they contained 2,500 bushels, and an agreement that, if they did not, *A.* would supply the deficiency. The sum to be paid for the 2,500 bushels was agreed on, and time given for the payment; and the cribs of corn were left with *A.*, as *B.'s* agent, to be taken care of for *B.* *Held*, that, as between *A.* and *B.*, the sale was complete. *Held*, also, that *B.* had no lien on the corn. *Held*, also, that, supposing there was not such a change of possession as is contemplated by s. 8, c. 33, R. S. 1843, yet even as between *B.* and a subsequent *bona fide* purchaser from *A.*, the sale to *B.* was valid.

ERROR to the *Fountain* Circuit Court.

Friday,
December 24.

BLACKFORD, J.—On the 10th of *March*, 1850, *Joseph L. Sloan* brought an action of replevin, in the *Fountain* Circuit Court, against *John Kingore* and *Chauncey Scott*. *Kingore* made default. *Scott* pleaded property in himself. The plaintiff replied that the property was his. Verdict and judgment for the defendants.

The facts are as follows: On the 29th of *December*, 1849, *Kingore*, at a certain farm in said county on which he resided, proposed to sell to one *Glover* 2,500 bushels of corn, and showed him nine cribs of corn there situate. *Kingore* said that the cribs had been measured, and that they contained 2,500 bushels. *Glover* said he did not believe the cribs contained that quantity. *Kingore* said that if on measurement the cribs failed to measure 2,500 bushels, he would make up the deficiency out of his barn. *Glover* was the agent of *Sloan*, the now plaintiff, and told *Kingore*, that he was buying the corn for *Sloan*. *Glover* then bought for *Sloan*, from *Kingore*, 2,500 bushels of corn at (as the witness said) 21 cents a bushel; *Kingore* agreeing that if said cribs, on being measured, did not contain 2,500 bushels of corn, he would make up the deficiency out of his barn. *Kingore* and *Glover* then went to the cribs, and after they had examined them, *Kingore* said to *Glover*, as agent of *Sloan*, that from that time forward the corn in those nine cribs was the property of and at the risk of *Sloan*, and that in case of loss or damage by storms, thieves, or otherwise, the loss was to be *Sloan's*, and not his, (*Kingore's*). *Glover* then took possession of the cribs of corn as the property of *Sloan* and as his agent, and in pursuance of said purchase, with the understanding with *Kingore* that any deficiency was to be made up out of *Kingore's* barn. *Glover*, as said agent, then employed *Kingore* to take care of the corn, and, if any boards blew off of the cribs, *Kingore* was to put them on and secure the corn from the weather, and be paid for his trouble. At the time of this contract, *Kingore* was indebted to *Sloan* for money secured by some promissory notes given by *Kingore* and assigned to *Sloan*, one of which was for 13 dollars and some cents; which notes formed a part payment on the contract, and were, in pursuance thereof, delivered up to *Kingore* on the 5th of *June*, 1850. The corn so sold by *Kingore* to *Sloan*, is the same corn in controversy in the present suit. *Glover* made a memorandum of the contract at the time, which, as he swears, contains substantially the contract between *Kin-*

*gore* and *Sloan.* That memorandum states that, on the 29th of *December*, 1849, said *Sloan* bought of *Kingore* 2,500 bushels of corn, then delivered to *Sloan* in the pens on the farm occupied by *Kingore*, at the rate of 20 cents a bushel, of which sum 25 dollars were to be paid on the 15th of *February*, 1850, and the residue, 425 dollars, on the 1st of *August*, 1850.

The defendant, *Scott*, on the 20th of *February*, 1850, bought of *Kingore* six cribs of corn, agreeing to take them at 1,600 bushels, at 25 cents a bushel.

We are of opinion that these facts sustain the suit. *Scott* contends that the sale to the plaintiff could not be complete until the corn in the cribs was measured. The law on the subject is, that if any material act should remain to be done on the part of the seller, *previously to the delivery of the goods*, the property will not pass to the vendee until such act shall have been done. Williams on Personal Property, 36. But that rule does not apply to this case. Here the nine cribs of corn were sold and actually delivered by *Kingore* to *Sloan* at so much a bushel, with a warranty that they contained 2,500 bushels, and an agreement that, if they did not, the seller would supply the deficiency. The sum to be paid for the 2,500 bushels, namely, 450 dollars, was agreed on, and time given for the payment. The cribs of corn were left with *Kingore*, merely as *Sloan's* agent, to be taken care of for his principal. These acts rendered the sale of the nine cribs of corn complete, as between *Kingore* and *Sloan*, and take the case out of the above-mentioned rule. The corn, it is true, was to be subsequently measured, but that was only to ascertain whether the seller's warranty was complied with. The same acts also deprived the seller of any lien, which he might otherwise have had, for the unpaid price of the corn.

But as *Scott* may be a *bona fide* purchaser for value, we must examine whether his purchase can derive any aid from the circumstance that the corn was left by *Sloan* in *Kingore's* possession. We have a statute on the subject, which must determine this point. The statute pro-

Nov. Term, 1852.

vides that a sale of goods, if not followed by an actual change of possession, will be presumed fraudulent as to subsequent purchasers in good faith, and be conclusive evidence of fraud, unless it appear that the sale was made in good faith, and without intent to defraud such purchasers. R. S. p. 590. Now, supposing that there was not, in the first sale, such a change of possession as the statute contemplates, that circumstance will not affect this case. The reason is, that the evidence sufficiently shows that the first sale was made in good faith and without any fraudulent intention.

*Per Curiam.*—The judgment is reversed, and the verdict set aside with costs. Cause remanded, &c.

*R. A. Chandler*, for the plaintiff.

*H. S. Lane* and *S. C. Willson*, for the defendants.